UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PAMELA C. PETERSEN,<br><br>            Plaintiff,<br><br> v.<br><br>CAROLYN W. COLVIN,<br>*Acting Commissioner of Social Security*,<br><br>            Defendant. | Case No. 2:13-cv-01147-RFB-GWF<br><br>**ORDER ACCEPTING REPORT AND RECOMMENDATION** |

**I. INTRODUCTION**

Before the Court is Plaintiff Pamela Petersen's Motion for Reversal and/or Remand, ECF No. 16. Additionally before the Court is a Cross Motion to Affirm, ECF No. 19, filed by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security Administration ("Commissioner"). On November 7, 2014, the Honorable George Foley, Jr., United States Magistrate Judge, issued a Report and Recommendation ("Report"), ECF No. 23, recommending Petersen's motion be granted and the Commissioner's cross motion be denied. The Commissioner timely objected, ECF No. 26, and a response was filed by Petersen, ECF No. 28. For the reasons discussed below, the Court accepts the Report, grants Petersen's Motion for Reversal and/or Remand, and denies the Commissioner's Cross Motion to Affirm.

**II. BACKGROUND**

Neither party objected to the Magistrate Judge's summary of the background facts, and so the Court incorporates and adopts, without restating, that "background" section here. See Report 1:23–19:6, ECF No. 23.

### III. LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A party may file specific written objections to the findings and recommendations of a magistrate judge. Id. § 636(b)(1); D. Nev. R. IB 3-2(a). When written objections have been filed, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations and authorizes district courts to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In undertaking that review, an Administrative Law Judge's (ALJ's) "disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)).

"If the evidence can reasonably support either affirming or reversing a decision, [a reviewing court] may not substitute [its] judgment for that of the Commissioner." Lingenfelter, 504 F.3d at 1035. Nevertheless, the court may not simply affirm by selecting a subset of the evidence supporting the ALJ's conclusion, nor can the Court affirm on a ground on which the ALJ did not rely. Garrison, 759 F.3d at 1009–10. Rather, the court must "review the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion," to determine whether that conclusion is supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Id. at 1039. When determining assigning weight and resolving conflicts in medical testimony, the 9th Circuit distinguishes the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; (3) neither treating nor

examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The treating physician's opinion is generally entitled to more weight. Id. If a treating physician's opinion or ultimate conclusion is not contradicted by another physician, "it may be rejected only for 'clear and convincing' reasons." Id. However, when the treating physician's opinion is contradicted by another physician, the Commissioner may reject it by "providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." Id. A treating physician's opinion is still owed deference if contradicted and is often "entitled to the greatest weight… even when it does not meet the test for controlling weight." Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007). Because a treating physician has the greatest opportunity to observe and know the claimant as an individual, the ALJ should rely on the treating physician's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). However, the ALJ may reject conclusory opinions in the form of a checklist containing no explanations for the conclusions.  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

When a treating physician's opinion is not assigned controlling weight, the ALJ considers specific factors in determining the appropriate weight to assign the opinion. Orn, 495 F.3d at 631. The factors include the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the amount and quality of evidence supporting the medical opinion; the medical opinion's consistency with the record as a whole; the specialty of the physician providing the opinion; and, other factors which support or contradict the opinion. Id., 10 C.F.R § 404.1527(c). The ALJ must provide a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and [make] findings" rather than state mere conclusions for dismissing the opinion of a treating physician. Reddick, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ errs when he fails to explicitly reject a medical opinion, fails to provide specific and legitimate reasons for crediting one medical opinion over another, ignores or rejects an opinion by offering boilerplate language, or assigns too little weight to an opinion without explanation for why another opinion is more persuasive. Garrison, 759 F.3d at 1012-13.

. . .

When determining the credibility of a claimant's testimony, the ALJ engages in a two-step analysis. Garrison, 759 F. 3d at 1014-15. First, the claimant must have presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter, 504 F.3d at 1035-36 (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). The claimant does not need to produce evidence of the symptoms alleged or their severity, but she must show the impairments could reasonably cause some degree of the symptoms. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, the ALJ determines the credibility of the claimant's testimony regarding the severity of her symptoms. Garrison at 1014-15. Unless affirmative evidence supports a finding of malingering, the ALJ may only reject the claimant's testimony by providing "specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006). "[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," however objective medical evidence, evidence of conservative treatment, and contradictions found by considering the claimants daily activities are relevant factors in determining the severity of the claimant's pain and its disabling effects. Rollins v. Massanari, 261 F. 3d 853, 856-57 (9th Cir. 2001). "Many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Therefore, "claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722.

In the event the ALJ erred, the Court may remand for additional administrative proceedings when development of the record would be useful. Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). However, when "further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id. Reversal and remand for the calculation and award of benefits is appropriate when "it is clear from the administrative record that the ALJ would be required to award benefits" after crediting as true evidence rejected by the ALJ. Garrison, 759 F.3d at 1019. The Court should credit evidence rejected by the ALJ as true and remand for the calculation and award of benefits if (1)

1  the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no
2  outstanding issues that must be resolved before a determination of disability can be made; and,
3  (3) it is clear from the record that the ALJ would be required to find the claimant disabled were
4  such evidence credited. Benecke, 379 F.3d at 593. When the ALJ errs but the validity of the
5  ALJ's conclusion is not affected, the error is deemed harmless and reversal is inappropriate.
6  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008).

7  The Social Security Act has established a five-step sequential evaluation procedure for
8  determining Social Security disability claims. See 20 C.F.R. § 404.1520(a)(4); Garrison, 759
9  F.3d at 1010. "The burden of proof is on the claimant at steps one through four, but shifts to the
10 Commissioner at step five." Id. at 1011. Here, the ALJ resolved Petersen's claim at step four. AR
11 32. At step four, the ALJ considers the assessment of the claimant's residual functional capacity
12 ("RFC") as well as the claimant's capability of performing past relevant work. Garrison, 759
13 F.3d at 1010. RFC is defined as the most an individual is capable of doing in a work setting
14 despite the individual's impairments and related symptoms, such as pain. 20 C.F.R. §
15 416.945(a)(1). If the claimant is incapable of performing past relevant work, the ALJ determines
16 whether the claimant can make an adjustment to substantial gainful work other than his past
17 relevant work in step five. 20 C.F.R. § 404.1520(g).

18

19 **IV.    DISCUSSION**

20 ALJ Norman L. Bennett issued a decision on January 5, 2012 finding Petersen ineligible
21 for disability under sections 216(i) and 223(d) of the Social Security Act. AR 32. The ALJ
22 determined Petersen suffered from medically determinable impairments including fibromyalgia,
23 carpal tunnel syndrome, and degenerative disc disease of the lumbar and cervical spine, which
24 affected Petersen's ability to perform basic work related activities. Id. The ALJ also determined
25 the impairments were severe for Social Security purposes. Id. However, by rejecting the opinion
26 of Petersen's treating physician and finding Petersen's testimony regarding the severity of her
27 symptoms not credible, the ALJ found Petersen still retained the RFC for sedentary work. Id.
28 . . .

1    Consequently, the ALJ found Petersen was not disabled under the Social Security Act because
2    she was capable of performing her past relevant work as an office manager. Id. at 31-32.

3      The Magistrate Court, the Honorable George Foley, reviewed the ALJ's decision and
4    found the ALJ's decision was not supported by substantial evidence for two reasons. ECF No.
5    23. First, the Court found the ALJ erred in interpreting Petersen's medical records, particularly
6    those of Petersen's treating physician, Gary DeShazo, D.O. and a Waddell's sign assessment
7    conducted by Trevor Nogueira, M.D. Id.  Judge Foley held the error was not harmless because it
8    provided the basis for the rejection of DeShazo's opinion, which should have been given
9    controlling weight. Id. Second, Judge Foley found the ALJ erred by discrediting Petersen's
10   testimony regarding the severity of her symptoms. Id. Judge Foley found the ALJ misunderstood
11   the notes of Kara Cross, Ph.D. and applied the flawed interpretation of the Waddle's sign
12   assessment. Id. Judge Foley also determined the alleged false statements Petersen made in an
13   effort to obtain medication early possibly detracted from her credibility but also coincided with
14   DeShazo's opinion and supported the existence of a psychological component to her symptoms.
15   Id. Finally, Judge Foley remanded the matter to the Commissioner to either develop the record
16   further by ordering a neurological evaluation as recommended by DeShazo or credit the rejected
17   evidence as true and grant disability benefits. Id.

18     After review of the record, the parties' briefs, and Judge Foley's Report, the Court
19   concludes the ALJ erred in deciding Petersen is not disabled under the Social Security Act. First,
20   the ALJ failed to articulate specific and legitimate reasons for denying Petersen's treating
21   physician's opinion controlling weight. Second, the ALJ failed to provide clear and convincing
22   reasons for discrediting Petersen's testimony. Finally, because the ALJ's errors cannot be
23   considered harmless, the Court credits as true the rejected evidence and remands the matter for
24   calculation of benefits as further development of the record would serve no purpose.
25   Accordingly, the Court denies the Report's recommendation to remand for development of the
26   record, accepts the Report's recommendation for remand to award benefits, grants Petersen's
27   Motion for Reversal and/or Remand, and denies the Commissioner's Motion to Affirm.
28

### A. Treating Physician's Opinion

The ALJ assigned no weight to the opinion of Petersen's treating physician, DeShazo. AR 30. Contrarily, the ALJ assigned great weight to the opinions of two examining physicians, Cross and Nogueira. AR 29-30. The Commissioner argues the ALJ offered four specific and legitimate reasons for the ALJ's adoption of Noguira's opinion over DeShazo's. First, the ALJ stated DeShazo diagnosed impairments for which there was limited evidence. ECF No. 19. Second, the Commissioner argues the ALJ may reject DeShazo's opinion as a check-off report lacking any explanations. Id. Third, ALJ pointed to evidence in the record contradicting DeShazo's opinion. Id. Finally, the Commissioner argues the ALJ's mistakes are harmless. Id.

#### 1. Evidence Supporting DeShazo's Opinion

The Commissioner first argues DeShazo's opinion is entitled to no weight because DeShazo diagnosed Petersen with "fifty impairments, many of which had never been mentioned before, including depression, anxiety, and vertigo." AR 30. While the record lacks support for some diagnoses, DeShazo based his opinion on a limited number of impairments: carpal tunnel syndrome, cervical disc pathology, decreasing mental status, neuropathy in her hands and legs, weakness in her lower extremities, and increasing pain from fibromyalgia. AR 532, 541. He further clarified the basis of his opinion in the "Treating Physician Questionnaire" by indicating Petersen was totally disabled because of the pain in her joints, headaches, bilateral arm weakness, as well as anxiety and/or panic attacks. AR 592-94.

The record contains objective medical evidence to support the impairments DeShazo relied upon in forming his opinion. For carpal tunnel syndrome, Petersen underwent surgery in November 2008 to relieve hand pain. AR 225, 234. She continued to complain of thumb and wrist pain thereafter. Id. at 225.

Regarding Petersen's back pain, DeShazo indicated Petersen suffered from cervical disc pathology in October 2010. Similarly, Doctor Walter Morris Kidwell diagnosed Petersen with cervical degenerative disc disease in November 2010. AR 340. Doctor Kathleen D. Smith noted Petersen's MRI showed a disc bulge in December 2010. AR 344. Doctor Sanghamitra Basu

1  opined Petersen's tenderness stemmed from her cervical and lumbar disc degeneration or
2  fibromyalgia. AR 475-76. Doctor Jason Garber also noted Petersen suffered back pain from a
3  broad-based disc herniation with neural foraminal narrowing. AR 468.

4  As for Petersen's decreasing mental status, Cross noted Petersen complained of mild
5  depression in May 2010. AR 284. Likewise, DeShazo reported Petersen complained of anxiety in
6  January 2010, July 2010, and October 2010. AR 313, 315, 318. Nogueira also notated Petersen
7  complained of sadness, depression, and anxiety in July 2010. AR 289. Finally, Kidwell reported
8  Petersen complained of depression in November 2010. AR 338.

9  Further, Noguiera's records support both the neuropathy in Petersen's hands and legs as
10 well as the weakness in her lower extremities. Nogueira indicated Petersen complained of
11 weakness, numbness, and tingling. AR 289. Likewise, DeShazo reported Petersen complained of
12 numbness in October 2010 and DeShazo reported Petersen fell due weakness in March 2011. AR
13 313, 532.

14 Finally, Petersen suffers from fibromyalgia. AR 340. Fibromyalgia is a rheumatic disease
15 with an unknown cause and no cure. Benecke, 379 F.3d at 589. Besides being poorly understood
16 by medical professionals, Fibromyalgia is diagnosed through a set of diagnostic criteria rather
17 than objective medical tests. Id. Symptoms include chronic body pain, multiple tender points,
18 fatigue, stiffness, and sleep disturbance. Id. Multiple physicians diagnosed Petersen with
19 fibromyalgia including Kidwell and DeShazo. AR 340, 537. Additionally, the record consistently
20 references the symptoms noted in Benecke indicating fibromyalgia. AR 288-296, 314-340.

21 Because the record contains overwhelming evidence supporting the impairments
22 DeShazo relied on in forming his opinion and no objective medical exams exist for fibromyalgia,
23 the ALJ clearly erred in failing to credit his opinion.

24

25     ***2. Check Off Report***

26 The Commissioner also argues the ALJ properly rejected DeShazo's opinion because it
27 was a check-off report. ECF 19.

28 . . .

- 8 -

In so doing, the ALJ failed to consider the explanations DeShazo gave for his opinion as well as the duration and frequency of the relationship between DeShazo and Petersen.

DeShazo opined Petersen was totally disabled. AR 515, 532. He explained his conclusion by stating the impairments, symptoms, and other factors his opinion was based upon in addition to the checklist form. Id. Therefore, the Commissioner erred by failing to recognize the checklist form was supplemented by DeShazo's explanations, some of which referenced observations obtained over the course of the treating relationship.

Moreover, the ALJ found DeShazo treated Petersen only four times over a period of one year[1]. AR 30. However, the administration record contains progress notes, telephone communications, and office notes from Dr. DeShazo's office revealing a more extensive and frequent relationship. AR 313-337. The administrative record reveals DeShazo treated Petersen as early as August 12, 2009 and continued to through at least April 4, 2011. Id. The record also reflects a minimum of fifteen interactions rather than four as found by the ALJ. Id. This extensive relationship established DeShazo as the physician best able to observe and know Petersen as an individual. Therefore, the ALJ erred in finding the treating relationship was limited and overlooked the substantial relationship and notes supporting and explaining DeShazo's opinion.

### 3. Evidence Contradicting DeShazo's Opinion

To justify rejecting DeShazo's opinion, the Commissioner points to contradictions between Nogueira's and DeShazo's opinions and mentions DeShazo's notes indicate he performed a male genitourinary assessment on Petersen. AR 30, Footnote 2. Nogueira opined Petersen "could stand and/or walk at least two hours in an 8-hour workday [and] could sit for six hours in an 8-hour workday" but would need to change positions every two hours. AR 29. He also noted she "could never climb ladders/scaffolds, kneel, or crawl, could occasionally climb ramps/stairs, stoop/bend, and crouch/squat, and could frequently balance." Id.

---

[1] The ALJ found DeShazo treated Petersen February 21, 2011, March 22, 2011, June 13, 2011, and September 12, 2011. AR 30.

DeShazo opined Petersen was totally disabled. AR 515, 532.

Despite DeShazo's classification as a treating physician, the ALJ rejected his opinion in favor of Noguiera's and denied giving DeShazo's opinion the deference customarily given to a treating physician. While Noguiera's opinion did contradict DeShazo's and the male genitourinary assessment was unlikely performed, DeShazo based his opinion on aforementioned findings supported by the record as described above. AR 541, 532. As a treating physician, DeShazo's opinion should have been given deference unless the ALJ provided legitimate reasons to rule otherwise. Here, the ALJ's reasoning for adopting Noguiera's opinion over DeShazo's is unpersuasive and illegitimate, because as discussed above, objective medical evidence and a substantial treating relationship supports DeShazo's conclusions.

### 4. Harmless Error

Finally, the Commissioner argues any error in failing to adopt DeShazo's opinion was harmless. ECF 19. The Court cannot agree. By rejecting DeShazo's opinion, the ALJ did not consider Petersen's limitations discussed in DeShazo's records, information critical to the outcome of a disability claim. Rather, the ALJ disregarded the opinion of a treating physician who was entitled deference. Consequently, the ALJ mistakenly rejected the majority of the evidence supporting Petersen's claim and negating the ultimate conclusion.

### B. Discrediting Petersen's Testimony

The ALJ argues Petersen's testimony regarding the severity of her symptoms is not fully credible because the record lacks objective medical evidence supporting her allegations, testing indicates a lack of anatomical basis for her complaints, her drug-seeking behavior diminishes her credibility, and her daily activities undermine the severity claimed.

### 1. Objective Medical Evidence for Underlying Impairments

The ALJ erred in determining the record lacked objective medical evidence supporting Petersen's claims. As discussed above, the Court has already determined the ALJ improperly

rejected DeShazo's opinion. Once this opinion is properly credited, it becomes clear that Petersen successfully presented objective medical evidence for carpal tunnel syndrome, cervical disc pathology, decreasing mental status, neuropathy in her hands and legs, weakness in her lower extremities, as well as evidence for a diagnosis of fibromyalgia.

### *2. Malingering and Drug Seeking Behavior*

The Commissioner argues testing and drug-seeking behavior undermines Petersen's credibility. In finding Petersen was not fully reliable, the ALJ relied on Nogueira's notes indicating Petersen scored a 3/5 for Waddell's signs of malingering[2]. AR 30. The ALJ interpreted this as an explicit finding that Petersen exaggerated her symptoms. Id. In combination with the ALJ's belief that Petersen exhibited "drug seeking behavior," the ALJ's finding that Petersen was malingered led to his conclusion that Petersen was not fully credible and that she had alternative motives for seeking medication.

However, the ALJ improperly found the Waddell's test to be an explicit finding of malingering. Not only did Nogueira not conclude Petersen was a malingerer, DeShazo explicitly stated she was not. AR 292, 592. Additionally, as described by Magistrate Foley in his Report, the Commissioner cited an article to explain the Waddell's sign assessment showed a lack of anatomical cause. ECF 19. However, the article continues and clarifies the score does not indicate "the pain is imagined or that the person is malingering." Laura Jensen, M.D., *Nonorganic findings – What are they?*, BC Medical Journal, Vol. 51, No. 3, Apr. 2009, at 106; http:// www.bcmj.org/icbc/nonorganic-findings%E2%80%94what-are-they (last visited September 25, 2015). Rather, it indicates a psychological factor may be present. Id.

---

[2] Waddell's signs assess five types of nonorganic findings: (1) Tenderness- tests for tenderness to superficial light touch that would not normally result in pain or tenderness, (2) Distraction- tests improved performance on physical tests in different positions and when the patient is distracted from formal testing, (3) Regional- weakness, sensory, or both. Tests for regional disturbances of sensation or motor function that do not follow an anatomical pathway, (4) Overreaction- tests for overreaction to stimuli, and (5) Simulation Testing- tests for complaints of pain in response to simulated testing. Laura Jensen, M.D., *Nonorganic findings – What are they?*, BC Medical Journal, Vol. 51, No. 3, Apr. 2009, at 106; http:// www.bcmj.org/icbc/nonorganic-findings%E2%80%94what-are-they (last visited September 25, 2015).

The ALJ clearly erred by interpreting Noguiera's notes as a finding of malingering, which in turn supported the ALJ's opinion that Petersen engaged in drug-seeking behavior for reasons other than treating pain. Since there is objective medical evidence that Petersen suffers from impairments capable of causing pain and without the explicit finding of malingering, Petersen's behavior of seeking out pain medication is not a clear and convincing reason for discrediting her testimony.

### 3. Daily Activities

Next, the Commissioner contends Petersen's daily activities contradict her allegations of severe pain. ECF 19. The ALJ erred in two respects. First, the ALJ incorrectly interpreted Cross' opinion as a contradiction of Petersen's testimony. Second, the ALJ discredited Petersen's testimony based upon her attempt to lead a normal life.

Petersen testified she use to clean the house, grocery shop, and carpool for her children. AR. 54. She continued and stated, "My husband does about 95% of that now." Id. She also testified she has trouble with personal hygiene tasks such as showering, tying her shoes, buttoning small buttons, and hooking her jewelry. AR 55. Petersen testified to still doing some work but noted she needs frequent breaks and the ability to change positions. AR 54-56. She also stated the tasks increase her pain levels. Id.

Similarly, Petersen's husband testified she cooked, cleaned, cared for their child and pets, shopped, and paid bills. AR 184-90. He also testified she talked to family regularly, socialized at church, and helped with the Girl Scouts. Id. On the other hand, he testified she is physically limited and has problems sleeping more than four hours a night, buttoning or zipping clothing, or sitting or standing for long periods. Id.

The ALJ relied heavily on Cross' notes of Petersen's daily activities. Cross noted Petersen could dress, cook, bathe, complete household chores and errands, shop and drive. AR 284. Cross also stated Petersen cares for her 12-year-old daughter, cooks special things for her daughter's Girl Scout group, helps in the neighbor's carpool, and gets along excellently with others. Id.

1       However, Cross's notes do not contradict Petersen's testimony regarding her pain. Cross
2  stated Petersen was capable of completing home tasks but fails to indicate any limitations,
3  difficulties, pain or lack thereof. Petersen has also testified she is capable of completing these
4  tasks but also testified to the difficulty and increased pain she experiences when doing so.
5  Therefore, Cross' notes contain no statements to contradict Petersen's claims of pain but are
6  aligned with the daily activities Petersen describes.

7       Moreover, the ALJ overlooked the fact that Petersen completes her tasks with frequent
8  breaks and substantial medication. While these options are available to her at home, they are
9  undesirable in a work environment. Consequently, the ALJ improperly penalized Petersen for
10 attempting to lead a normal life despite her pain and erred by assuming her daily efforts could
11 carry over into a work environment.

12

13     **C.  Reverse for Calculation of Benefits**

14     Because the ALJ failed to provide legally sufficient reasons for rejecting the various
15 evidence discussed above, the Court credits the evidence as true.

16     However, the Commissioner argues the record contains the outstanding issue of whether
17 Petersen's possible drug addiction prohibits her from claiming benefits pursuant to 42 U.S.C. §§
18 423(d)(2)(C), 1382 c(a)(3)(J). ECF 19. The Commissioner states the analysis is required if
19 Petersen is found to be disabled. Id. However, pursuant to 20 C.F.R §§404.1535(a), 416.935(a),
20 the determination is needed only when a finding of disability has been made *and* medical
21 evidence of a drug addiction or alcoholism exists. Bustamante v. Massanari, 262 F.3d 949, 954
22 (9th Cir. 2001). Unlike Bustamante, Peterson has not been diagnosed with alcoholism or drug
23 addiction. Rather, the ALJ references "drug seeking behavior," which cannot constitute medical
24 evidence. AR 30-31.

25     Further, the Court agrees with the Commissioner that further medical evaluation is
26 unnecessary. ECF 19. While DeShazo requested a neurological evaluation which may be
27 necessary for medical purposes, the exam is unnecessary to the determination of disability.
28 . . .

Here, it is clear the ALJ would be required to award benefits to Petersen after crediting DeShazo's opinion and Petersen's testimony as true.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED** that the Report and Recommendation (ECF No. 23) is DENIED in part and ADOPTED in part, reversing the ALJ's ultimate decision and remanding to the ALJ for award and calculation of benefits.

**IT IS FURTHER ORDERED** that Plaintiff Pamela C. Petersen's Motion for Reversal and/or Remand (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Commissioner of Social Security's Cross Motion to Affirm (ECF No. 19) is **DENIED**.

DATED: September 30, 2015.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**